**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

TRACY PRITCHETT,                                    :

      Plaintiff,                               :

vs.                                                :            CA 15-0044-C

CAROLYN W. COLVIN,                                  :
Acting Commissioner of Social Security,
                                                   :
      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 22 & 24 ("In accordance with  provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the September 23, 2015 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]     Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 22 & 24 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to a right shoulder rotator cuff tear with degenerative arthritis. The Administrative Law Judge (ALJ) made the following relevant findings:

>   1.    **The Claimant meets the insured status requirements of the Social Security Act through December 31, 2016.**
>
>   2.    **The Claimant has not engaged in substantial gainful activity since October 3, 2011, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).**
>
>   3.    **The claimant has the following severe impairment: right shoulder rotator cuff tear with degenerative arthritis (20 C.F.R. § 404.1520(c)).**
>
>   .    .    .
>
>   4.    **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. §  404.1520(d), 404.1525 and 404.1526).**
>
>   .    .    .
>
>   5.    **After careful consideration of the entire record, the undersigned finds that the Claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). The Claimant can occasionally push and pull arm controls with her right arm. The Claimant cannot climb ladders, ropes, or scaffolds.  The Claimant cannot reach overhead with her right arm. The Claimant should avoid exposure to unprotected heights and hazardous machinery.**
>
>   In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
>   In considering the Claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the Claimant's pain or other symptoms.

2

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the Claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the Claimant's symptoms to determine the extent to which they limit the Claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The Claimant is a forty-four year old woman with a high school level education who alleges she is disabled due to an injury to her right rotator cuff. The Claimant has stated she injured her right shoulder when she was involved in a motor vehicle accident on October 3, 2011. Despite medical reports showing the Claimant underwent an operation to repair the tear to her rotator cuff, the Claimant testified she has not undergone an operation on her right shoulder. The Claimant testified she cannot lift her right arm or grip with her right hand even though that is her dominant hand. She testified she cannot pick up a gallon of milk. She testified she [can] write her name. She testified she takes Lortab every day and it makes her drowsy. She testified she cannot push a shopping cart. She testified she cannot lift objects above her shoulder. She testified that she has to do everything with her left hand.

The objective evidence does not support the Claimant's allegations and testimony. On October 3, 2011, the Claimant was injured in a motor vehicle accident. An MRI showed the Claimant had a full thickness tear to her right rotator cuff. A report dated October 20, 2011 suggested the Claimant underwent an operation to repair the tear. That reflected the last treatment the Claimant received for her shoulder impairment until the Claimant's attorney had the Claimant return to her physician in April 2013, a month before the hearing. The last treatment report from October 2011 showed only the Claimant's right arm flexion was limited by the impairment; she had full range of motion in other directions in her right shoulder. The Claimant did not have any atrophy in the arm. The final treatment report also indicated the Claimant was not taking any medication for the pain and she was not prescribed any medication thereafter.

Between the last treatment session in October 2011 and her next treatment by her physician in April 2013, the Claimant went to the emergency room in August 2012 complaining of ankle pain, which is discussed above. Interestingly, that treatment report indicated the Claimant did not complain of any pain in her right shoulder and the emergency room physician did not identify any problem affecting her right shoulder. Such evidence further indicates the Claimant's pain in her shoulder is not as severe as the Claimant has indicated.

The Claimant was scheduled to see her physician in November 2012; however, the Claimant departed her physician's office *before* being seen by the physician. Moreover, at that time, the Claimant did not complain about her right arm; instead, she just complained of heartburn and low back pain. This treatment report[] also shows the Claimant's testimony regarding the pain and limitation in her shoulder is not credible as the Claimant did not complain of pain in the shoulder and *left* before even seeing the physician.

In April 2013, the Claimant, at her attorney's direction, returned to see her physician—the first time in eighteen (18) months. She observed the Claimant continued to have good muscle tone and no atrophy in the right arm. She had reduced range of motion in her right shoulder, but her other extremities, including her left arm, were unimpaired. The Claimant's neurological system was also normal, which undermines the Claimant's claim that she has numbness in her right arm. The physician prescribed the Claimant 5 mg of Lortab. This prescription was the first time the Claimant was prescribed Lortab or other narcotic pain medication despite the Claimant's testimony suggesting she had been taking Lortab for a long time. At that time, the physician also wrote the Claimant has severe degenerative arthritis in her right arm.

As part of the April 2013 treatment session, the physician filled out a medical source statement provided by the Claimant's attorney. The physician wrote the Claimant could only lift five pounds occasionally. She wrote the Claimant could not stand or walk for even one hour during the day. She also wrote the Claimant could frequently handle objects, occasionally climb stairs and ramps, balance, finger objects, bend, and stoop. She also wrote the Claimant could rarely and never push and pull controls, reach in all direction[s], operate motor vehicles, and work around hazardous machinery. She also estimated the Claimant would miss more than three days of work per month due to her pain, which she said would distract the Claimant to the point she could not adequately perform her daily tasks.

The assessment has been afforded minimal weight because it is inconsistent with the objective evidence. First, the physician's reports show the Claimant has no impairment affecting her legs, yet the physician wrote the Claimant could not walk or stand for even one hour during the day. She also wrote the Claimant had other postural limitations that do not require the use of her right arm. The level of the Claimant's pain is also questionable given the fact the physician did not prescribe any narcotic medication until April 2013. Even then, the physician prescribed the lowest therapeutic dosage of Lortab, which further indicates the physician did not believe the Claimant's pain was as severe as she wrote in the medical source statement. The Claimant's lack of treatment for the shoulder for the [] eighteen months [prior to the April 2013 completion of the medical source statement] also suggests the limitations are not as severe as the physician wrote. Additionally, the fact the Claimant did not

complain of arm pain the two times she sought medical treatment
between October 2011 and April 2013 also undermines the physician's
opinion regarding the Claimant's pain. The physician's lifting opinion also
seems inconsistent with the fact that the Claimant has full strength in her
left arm, so it is reasonable to conclude that the Claimant could lift far
more than five pounds using just her left arm. Given these gross
inconsistencies, the treating physician's report has been afforded minimal
weight.

The undersigned has also afforded little weight to the Claimant's
allegations and testimony because they are not credible. The Claimant's
general lack of treatment, including a recent session in which the Claimant
left after already being triaged by a nurse, strongly undermine[s] her
credibility. The lack of treatment indicates her pain and impairment is not
as limiting as the Claimant has alleged. The Claimant testified her lack of
treatment is due to her limited resources; however, the Claimant
continues to be able to afford cigarettes, which she smokes daily. Such
behavior further undermines the Claimant's credibility.

The Claimant's testimony regarding her Lortab usage is also inconsistent
with the medical evidence. The Claimant has only *recently* been prescribed
a narcotic pain reliever and her dosage is the lowest therapeutic amount,
which marginalizes her testimony regarding the severity of her pain and
purported side effects.

The Claimant also testified she did not use illicit drugs, yet the emergency
room report from August 2012 showed the Claimant was using illicit
drugs.

Conversely, the undersigned has afforded great weight to the assessment
offered by the medical consultant from the Disability Determination
Service. Although the medical consultant's assessment is eighteen months
old, the medical consultant did have the opportunity to consider the
October 2011 treatment reports. As the Claimant has had minimal
treatment since that time, his assessment is well informed. Moreover, his
assessment seems consistent with the medical evidence as it allows for
certain limitations. The fact the Claimant did not mention any problems
with her shoulder in August 2012 and November 2012 further supports
the medical consultant's assessment.

**6.      The Claimant is capable of performing past relevant work as a
cashier (DOT 211.467-010, light, unskilled). This work does not require
the performance of work-related activities precluded by the Claimant's
residual functional capacity (20 CFR 404.1565).**

In comparing the Claimant's residual functional capacity with the physical
and mental demands of this work, the undersigned finds that the
Claimant is able to perform it as actually and generally performed. Based
upon the vocational expert's education, training, and experience in

vocational matters, the vocational expert testified a person with the Claimant's residual functional capacity and vocational profile could perform the Claimant's past work as a cashier. In light of the expert's qualifications, the undersigned has adopted her testimony.

**7.      The Claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2011, through the date of this decision (20 CFR 404.1520(f)).**

(Tr. 16, 17 & 17-20 (internal citations omitted; emphasis in original).)   The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Although "a

---

[2]      "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

claimant bears the burden of demonstrating an inability to return to h[er]  past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform her past relevant work as a cashier, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or reweighing the evidence."  *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court]

---

[3]      This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

must affirm if the decision reached is supported by substantial evidence.'"  *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Pritchett asserts three reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in failing to accord substantial weight to the opinions of the treating physician, Dr. Judy Travis; (2) the ALJ's residual functional capacity (RFC) assessment is not supported by or linked to substantial evidence of record; and (3) the ALJ erred in relying on incorrect testimony from the vocational expert ("VE"). The Court will address each issue in turn.

**A.**      **Opinions of Plaintiff's Treating Physician, Dr. Judy Travis.** Pritchett initially contends that the ALJ erred in failing to accord substantial weight to the opinions of her treating physician, Dr. Judy Travis. On April 24, 2013, Travis completed both a physical medical source statement (that is, a "PCE") and a clinical assessment of pain ("CAP") form. (*See* Tr. 266-267.) On the CAP, Travis indicated that pain is present to such an extent as to be distracting to adequate performance of daily activities, physical activities greatly increase pain to such an extent as to cause distraction from task or total abandonment of task, and that the prescribed medication has the potential to produce significant side effects that may limit effectiveness of work duties or performance of everyday tasks. (Tr. 267.) And on the PCE, Travis indicated that though plaintiff can sit for 8 hours out of an 8-hour workday, she can only stand and walk less than one hour out of an 8-hour workday, can only lift and carry 5 pounds occasionally to 1 pound frequently, can rarely reach (including overhead) and push and pull arm (and/or leg) controls, and would, on average, miss more than 3 days of work per

month.[4] (Tr. 266.) The sole medical basis for the noted restrictions, in Travis' own words: "She has severe degenerative arthritis of r[igh]t shoulder requiring <u>narcotics</u>[.]" (*Id.* (emphasis in original).)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004) (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Soc. Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam). Most relevant to this case, an ALJ's articulation of reasons for rejecting a treating source's RFC and pain assessments must be supported by substantial evidence.

---

[4]     Interestingly, Travis indicated no problems with gross manipulation, specifically finding that plaintiff could frequently grasp, twist, and handle objects. (Tr. 266.)

*See id.* ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. In this case, therefore, the critical question is whether substantial evidence supports the ALJ's articulated reasons for rejecting Thebaud's RFC.") (citing *Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005)); *D'Andrea v. Commissioner of Social Security Admin.,* 389 Fed.Appx. 944, 947-948 (11th Cir. Jul. 28, 2010) (per curiam) (same).

In this case, the ALJ specifically determined that "minimal" weight was due to be afforded Travis' assessments because they were inconsistent with the objective evidence. (Tr. 19.)

> First, the physician's reports show the claimant has no impairment affecting her legs, yet the physician wrote the Claimant could not walk or stand for even one hour during the day. She also wrote the Claimant had other postural limitations that do not require the use of her right arm. The level of the Claimant's pain is also questionable given the fact the physician did not prescribe any narcotic medication until April 2013. Even then, the physician prescribed the lowest therapeutic dosage of Lortab, which further indicates the physician did not believe the Claimant's pain was as severe as she wrote in the medical source statement. The Claimant's lack of treatment for the shoulder for the [] eighteen months [prior to the April 2013 completion of the medical source statement] also suggests the limitations are not as severe as the physician wrote. Additionally, the fact the Claimant did not complain of arm pain the two times she sought medical treatment between October 2011 and April 2013 also undermines the physician's opinion regarding the Claimant's pain. The physician's lifting opinion also seems inconsistent with the fact that the Claimant has full strength in her left arm, so it is reasonable to conclude that the Claimant could lift far more than five pounds using just her left arm. Given these gross inconsistencies, the treating physician's report has been afforded minimal weight.

(*Id.*) The undersigned construes the ALJ's comments as an implicit (if not explicit) finding that Dr. Travis' opinions were conclusory and inconsistent with the doctor's own medical records, as well as not bolstered by the other evidence of record. (*See id.*)

A review of the transcript reflects that Dr. Travis intermittently has treated plaintiff since December of 2005. (*See, e.g.*, Tr. 223 (first record of visit reflects pap smear and request for birth control patches).) For the better part of the first seven years of treatment, that is, until October 3, 2011, Travis treated plaintiff primarily for obstetric (Depo-Provera shots, etc.) and gynecological (menstrual cramps, etc.) issues (*see* Tr. 219-223), that is, issues other than the impairment she now claims causes her to be disabled (*compare id. with* Tr. 16 ("**The Claimant has the following severe impairment: right shoulder rotator cuff tear with degenerative arthritis**[.]")). On October 3, 2013, plaintiff presented to Travis complaining of pain in her right shoulder and chest area following a motor vehicle accident on September 30, 2011. (Tr. 218.) Travis ordered an MRI of plaintiff's right shoulder but did not prescribe any narcotic pain medication. (*Id.*) The MRI, which was performed on October 11, 2011, revealed a large complete supraspinatus tendon tear with retraction and a small complete infraspinatus tendon tear with marked underlying tendinopathy. (Tr. 212.) Based on the results of the MRI, when Travis next saw Pritchett on October 18, 2011, she referred her to an orthopedic surgeon in Tuscaloosa, Alabama, Dr. Kevin Thompson. (Tr. 217; *compare id. with* Tr. 205-208.) Despite not having the surgery recommended by Dr. Thompson on October 20, 2011 (*compare* Tr. 208 ("ROTATOR CUFF TEAR . . . At this point given the fact that she has a full thickness tear of h[er] rotator cuff, I recommended surgery.") *with* Tr. 29 (plaintiff's hearing testimony that she did not have surgery)),[5] there is only one reference  in the record that Pritchett sought any form of medical treatment before April

---

[5]      Thompson's examination of plaintiff's right shoulder revealed no swelling or atrophy, tenderness on palpation, normal and pain-free active range of motion, normal but painful passive range of motion, and moderate findings on rotator cuff testing (Empty Can and Drop Arm). (Tr. 207-208.) "She []is tender at the AC joint and has pain with provocative testing. She has a painful arc of motion." (Tr. 208.)

24, 2013,[6] the date upon which Travis completed the above-referenced forms, and that is when she presented to Dr. Travis' office on November 21, 2012 complaining of low back pain and reflux (Tr. 271).[7]  Pritchett only saw the nurse on this visit to Travis' office, leaving before being seen by her treating physician. (Tr. 271.) On April 24, 2013, Dr. Travis examined Pritchett and completed the medical source statement and clinical assessment of pain forms at the behest of plaintiff's attorney. (*See* Tr. 268 ("**CHIEF COMPLAINT:** Patient was [s]ent here from Attorney Coplin[']s  office for a Medical Source Opinion form to be completed.").) On physical musculoskeletal examination, Travis noted the following: "PAIN AND DECREASED ROM IN RIGHT SHOULDER, OTHERWISE, Symmetrical. No deformities. No swellin[g]. Good muscle mass bilaterally. Full range of motion of all joints. All muscles functioning well. No atrophy noted." (Tr. 269.) Further, neurologic examination revealed: "Cranial nerves II-XII intact. Deep tendon and superficial reflexes are active and equal bilaterally. Sensorium clear." (Tr. 270.) Travis' assessment included rotator cuff/shoulder syndrome and low back pain, for which the stated plan was for plaintiff to take every six hours for pain a hydrocodone 5 mg-acetaminophen 500 mg capsule[.]" (*Id.*)

Based on the foregoing, the Court finds that the ALJ was absolutely correct in giving minimal weight to Dr. Travis' April 24, 2013 physical RFC findings because these findings are inconsistent with the objective medical evidence, including Travis' own

---

[6]     In other words, Pritchett made only one visit to a doctor (or medical facility) between October 20, 2011 (Tr. 205) and April 24, 2013 (Tr. 268-270; *see also id.* at 266-267), an 18-month period of time.

[7]     The ALJ, in her opinion, references that Pritchett "went to the emergency room in August 2012 complaining of ankle pain[.]" (Tr. 18.) It is clear to the Court that the emergency room records to which the ALJ makes reference (*see id.*) are not Pritchett's medical records; instead, they are the medical records of one Ruthie Walker (*see* Tr. 255-264).

examination notes. In other words, Dr. Travis' objective clinical findings are inconsistent with the findings set forth on the PCE form she completed on April 24, 2013; therefore, the Court finds the ALJ's articulated reason(s) for giving minimal weight to the April 24, 2013 findings supported by substantial evidence. Although counsel points to Travis' treatment of plaintiff for low back pain and chronic fatigue/malaise as support for the PCE limitations on standing and walking, this argument is found lacking. First, Travis' examination notes fail to reflect any objective findings/limitations with respect to those diagnoses that would "equate" to an almost complete inability to walk and stand during an 8-hour workday. (*See* Tr. 269.) Moreover, Travis specifically indicated that all the limitations noted on the form were based on plaintiff's degenerative arthritis of her right shoulder requiring narcotics, not low back pain and fatigue and malaise. In addition, Travis' "assessment"/"diagnoses" on April 24, 2013 included low back pain but not malaise/fatigue. (Tr. 270.) To be sure, Travis references chronic malaise and fatigue (along with low back pain) on a "Problem List" dating to April 25, 2010 (Tr. 268); however, the undersigned has extensively reviewed the totality of Travis' office records and not only finds no record of treatment on April 25, 2010 (*see* Tr. 217-223 & 271) but, as well, finds no mention in those records of treatment provided plaintiff for chronic low back pain[8] and/or chronic fatigue/malaise (*see id.*). Finally, plaintiff makes no argument that either of these impairments is a severe impairment; therefore, as non-severe impairments, any back pain or malaise/fatigue would not significantly limit her physical ability to do basic

---

[8]      As aforesaid, Pritchett presented to Travis' office on November 2, 2012 complaining of onset of back pain for about a week and reflux that had been bothering her for months; however, she left the office before being seen by Travis. (Tr. 271.)

work activities. *See* 20 C.F.R. § 1521(a). Accordingly, the ALJ did not err in according minimal weight to Travis' PCE as it is inconsistent with the objective medical evidence, in particular Travis' own examination findings.[9]

The ALJ accorded Travis' CAP assessment minimal weight essentially because Travis did not prescribe narcotic medication to treat plaintiff's right shoulder pain complaints until April of 2013, more than eighteen (18) months after plaintiff suffered a right rotator cuff tear, and then she only prescribed "the lowest therapeutic dosage of Lortab[.]" (Tr. 19.)  The narcotic pain medication plaintiff now takes—Lortab—contains 5 mg of hydrocodone bitartrate and 500 mg acetaminophen (Tr. 270) and is indicated for the "relief of moderate to moderately severe pain." *See* LORTAB® 5/500 Hydrocodone Bitartrate and Acetaminophen

http://dailymed.nlm.nih.gov/dailymed/archives/fdaDrugInfo. html, at 1 & 2 (last visited September 17, 2015). Given Travis' specific description of Pritchett's right shoulder pain as "[m]oderate" in severity (Tr. 268), with the physical examination reflecting only some pain and decreased range of motion in the right shoulder with no swelling or atrophy, there is certainly no basis for Travis' findings on the CAP form that pain is present to such an extent as to be distracting to adequate performance of daily activities, that physical activity greatly increases pain to such a degree as to cause distraction from task or total abandonment of task, etc. In other words, the findings on the CAP are inconsistent with Travis' specific description of the severity of plaintiff's shoulder pain as moderate. Accordingly, the undersigned discerns no error in the ALJ affording minimal weight to Travis' pain assessment.

---

[9]     The ALJ's observation that plaintiff has full use of her left arm and, therefore, would be able to lift and carry more than the 1 to 5 pounds suggested by Travis (Tr. 19) is nothing less than "spot on."

**B.**     **The ALJ's RFC Determination is not Supported by or Linked to Substantial Evidence of Record**. In her brief, plaintiff contends that the ALJ's RFC assessment is not supported by or linked to substantial evidence in the record and that the ALJ erred in failing "to include any limitation in reaching, handling, fingering, or performing gross or fine manipulation." (Doc. 13, at 5; *see also id.* at 6.)

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the Claimant has the residual functional capacity to perform less than the full range of light work**

**as defined in 20 CFR 404.1567(b). The Claimant can occasionally push and pull arm controls with her right arm. The Claimant cannot climb ladders, ropes, or scaffolds. The Claimant cannot reach overhead with her right arm. The Claimant should avoid exposure to unprotected heights and hazardous machinery.**" (Tr. 17 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[10]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[11]

---

[10]     In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

[11]     It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's (Continued)

In order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue,* 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases— include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003). In this case, of course, the ALJ accorded only minimal weight to the RFC assessment of plaintiff's treating physician, Dr. Judy Travis, and, for the reasons previously identified, properly found that Travis' RFC findings were due minimal weight; however, this did not leave the ALJ bereft of evidence relating to plaintiff's RFC as she still had Travis' examination

---

decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ ***could have*** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

findings, as well as those of Dr. Kevin Thompson, and the RFC assessment completed by a non-examining, reviewing physician, Dr. Howard Harper (*see* Tr. 42-53).[12] The ALJ did accord great weight to Dr. Harper's opinion (Tr. 19), a determination consistent with substantial evidence in the record, as explained more fully below.

Importantly, in establishing Pritchett's RFC, which means determining Pritchett's "remaining ability to do work despite her impairments[,]" *Packer*, 542 Fed.Appx. at 891—keeping a focus on the extent of those impairments as documented by the credible record evidence—the ALJ walked through all the evidence of record, along with the claimant's testimony (*see* Tr. 17-19), and ultimately concluded that plaintiff's RFC assessment was properly informed by the assessment of non-examiner Dr. Harper, as opposed to the assessment of Dr. Travis and plaintiff's testimony (*compare* Tr. 17 *with* Tr. 19). As previously determined, the ALJ properly accorded minimal weight to Dr. Travis' RFC assessment and the ALJ found plaintiff's testimony not entirely credible, a conclusion, as the defendant notes (Doc. 19, at 10), the plaintiff does not contest. Moreover, the undersigned can find nothing inconsistent with the RFC findings of Dr. Harper (Tr. 43-44 (claimant can occasionally lift and carry up to 20 pounds, frequently lift and carry 10 pounds, stand and/or walk 6 hours out of an 8-hour workday, sit about 6 hours out of an 8-hour workday, overhead reaching on the right limited to never, no overhead pushing and pulling)) and the findings on physical examinations by Dr.

---

[12]     Before completing his assessment on December 9, 2011, Dr. Harper reviewed the evidence from Rush Foundation Hospital, the University Orthopaedic Clinic (that is, Dr. Thompson), and DCH Regional (that is, the MRI results). (*See* Tr. 42.) Certainly, there is no information produced by Dr. Travis from her April 24, 2013 examination of Pritchett which indicates that the condition of plaintiff's shoulder was markedly different (or worse) from what it was at the end of 2011 (that is, October and December of 2011) and nothing else in the record which suggests a worsening of her condition; in fact, from October 21, 2011 through April 23, 2013, plaintiff sought no treatment for her right shoulder.

Thompson in October of 2011 and Dr. Travis in 2013 (*compare id. with* Tr. 205-208 & 269-270). Thus, the ALJ's RFC assessment, contrary to plaintiff's argument, did indeed include limitation on a certain type of reaching (Tr. 17 ("**Claimant cannot reach overhead with her right arm.**")) and there was no reason to include any limitation with respect to handling, fingering, or performing gross or fine manipulation, or any limitation with respect to non-overhead reaching, inasmuch as the record evidence does not support such limitations (*compare* Tr. 44 (handling/gross manipulation and fingering/fine manipulation are unlimited, and only overhead reaching limited) *with* Tr. 266 (finding plaintiff can frequently perform gross manipulation—that is, grasp, twist, and handle objects—and occasionally perform fine manipulation)). In light of the foregoing, the undersigned finds that the ALJ's RFC assessment provides an articulated linkage to the medical evidence of record. The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC. *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)). Thus, by "showing her work" (*see* Tr. 17-19), the ALJ has provided the required "linkage" between the record evidence and her RFC determination necessary to facilitate this Court's meaningful review of her decision.

> **C.**     **Did the ALJ Rely on Incorrect Testimony from the Vocational Expert (VE)?** Because substantial evidence of record supports the Commissioner's

determination that Pritchett can perform the requirements of light work as specifically identified by the ALJ, that is less than the full range of light work (*see* Tr. 17), the undersigned turns to  plaintiff's final argument that the ALJ erred in relying on incorrect testimony from the VE. Plaintiff specifically attacks the VE's identification of her job as falling within DOT 211.467-010, as opposed to the correct designation of 211.462-014. (*See* Doc. 13, at 6-7.) Both of these DOT sections describe cashier positions that fall within the light, semi-skilled category, with the sole difference from a physical standpoint being that the cashier position described in DOT 211.467-010 requires frequent reaching, handling and fingering whereas the cashier position described in 211.462-014 requires constant reaching, handling and fingering. (*See id.,* at 7.)

It is apparent to the undersigned that plaintiff's work as a cashier at Wal-Mart most likely was a light semi-skilled position, *compare Pugh v. Astrue*, 2012 WL 6014626, *3 (M.D. Ala. Dec. 3, 2012) ("Pugh performed work . . . as a cashier at WalMart, a light semi-skilled position, for eleven years.") *with Picou v. Commissioner of Social Security,* 2008 WL 237017, *3 (W.D. La. Jan. 2, 2008) ("Mr. LaFosse described claimant's past work as a cashier at Wal-Mart as light and semi-skilled."); *but cf. Vittatoe v. Astrue,* 2009 WL 122569, *4 (C.D. Cal. Jan. 16, 2009) (analyzing plaintiff's job as a Wal-Mart cashier in the context of DOT 211.462-010); therefore, the VE's categorization of that position as light (Tr. 35) admittedly was correct. And while the undersigned tends to agree with plaintiff that the description of her job (*see* Tr. 145) fits more comfortably within DOT 211.462-014, as opposed to DOT 211.467-010, the undersigned finds any error in misidentifying the proper DOT cashier slot for plaintiff's past job to be harmless since there is nothing to suggest that identification of DOT 211.462-014 would have changed the VE's testimony. There is simply not enough appreciable difference between constant reaching, handling and fingering, on the one hand, and  frequent reaching, handling

and fingering, on the other, to expect a different answer to whether plaintiff could perform her past work as a cashier based upon the hypothetical question posed by the ALJ in this case (*see* Tr. 35-36 ("Assume I find for purposes of the first hypothetical an individual with the claimant's same vocational profile who's limited to the range of light work activity as defined by the Social Security regulations, could not . . . push or pull arm controls with the right dominant upper extremity. No climbing ladders, ropes, scaffolds. ***No overhead reaching with the right dominant upper extremity.*** No unprotected heights or hazardous machinery." (emphasis supplied)). In other words, given the ALJ's specific limitation of no reaching overhead with the right upper extremity, there would be no expectation that a cashier position requiring constant reaching, handling and fingering would evoke a different response from the VE than one requiring frequent reaching, handling and fingering.[13] It is certainly implicit (if not explicit) in the VE's testimony that the reaching required by the cashier's position at Wal-Mart is not overhead reaching (*see* Tr. 35-36) and, therefore, the Court declines to return this case to the Commissioner for what it considers to be a mere technical "pigeonholing" of plaintiff's admittedly light past relevant work as a cashier at Wal-Mart.[14] Accordingly, the Commissioner's fourth-step determination is due to be

---

[13]      As noted above, the ALJ properly found no limitation with respect to handling and fingering objects and only noted a limitation with respect to reaching overhead on the right, that is, no limitations on non-overhead reaching.

[14]      This is the proper conclusion particularly since plaintiff's counsel was given the opportunity to question the VE and did not question the VE's DOT assignment at the hearing. *Cf. Buchholtz v. Barnhart,* 98 Fed.Appx. 540, 546 (7th Cir. 2004) ("Although the ALJ has a duty to question a VE about any inconsistencies with the DOT and resolve that conflict before relying on the VE's testimony, . . . counsel has the responsibility for raising the issue if the ALJ does not."); *Cammon v. Astrue,* 2009 WL 3245458 (N.D. Ga. Oct. 2, 2009) (the ALJ did not err in relying on the testimony of the VE where the ALJ had no reason to believe there was any conflict between the VE testimony and the DOT and counsel did not question the VE about any alleged conflict).

affirmed. *Compare Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 49 & 50 (11th Cir. Oct. 26, 2012) ("[S]tep four assesses the claimant's RFC to determine whether the claimant is capable of performing 'past relevant work.' . . . A claimant's RFC takes into account both physical and mental limitations. . . . Because more than a scintilla of evidence supported the ALJ's RFC assessment here, we will not second-guess the Commissioner's determination.") *with Phillips v. Barnhart,* 357 F.3d 1232, 1238-1239 (11th Cir. 2004) ("At the fourth step, the ALJ must assess: (1) the claimant's residual functional capacity []; and (2) the claimant's ability to return to [his] past relevant work. As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. Moreover, the ALJ will assess and make a finding about the claimant's residual functional capacity based on all the relevant medical and other evidence in the case. Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to [his] past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . If the claimant  can return to [his] past relevant work, the ALJ will conclude that the claimant is not disabled. If the claimant cannot return to [his] past relevant work, the ALJ moves on to step 5." (internal citations, quotation marks, and brackets omitted; brackets added)).

<u>**CONCLUSION**</u>

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 8th day of October, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**